# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3584

_____

Manuel Enrique Camacho

*Plaintiff - Appellant*

v.

Ray Hobbs, Director, Arkansas Department of Correction

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: December 12, 2014
Filed: January 21, 2015

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

On July 11, 2008, Manuel Enrique Camacho pleaded guilty to capital murder in Arkansas state court, and a written judgment and commitment order was entered on July 22, 2008. He did not file a direct appeal. After state postconviction relief was denied, Camacho filed a 28 U.S.C. § 2254 habeas petition in the Western District of Arkansas. The State responded by asserting that the petition was untimely under

the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(d)(1). The magistrate judge recommended denying relief, reasoning that because Arkansas law generally does not permit an appeal from a guilty plea, AEDPA's one-year limitations period began to run when the judgment of conviction was entered, not thirty days later when the time for filing a direct appeal from that judgment expired. The district court adopted the recommendation of the magistrate judge and dismissed Camacho's § 2254 petition as untimely, concluding that Camacho's petition was filed eighteen days past the deadline.[1] The district court granted a certificate of appealability on whether Camacho's habeas petition was timely filed under § 2244(d)(1) and, if not, whether he was entitled to equitable tolling under Holland v. Florida, 560 U.S. 631 (2010).

Camacho argues that the limitations period did not begin to run until the expiration of the thirty-day period for filing a direct appeal from the state-court judgment and that his § 2254 petition was therefore timely. After de novo review, we hold that Camacho's § 2254 petition was timely filed and that the district court erred in dismissing the petition as time-barred. See Wright v. Norris, 299 F.3d 926, 927 (8th Cir. 2002) (standard of review).

Under AEDPA, federal and state prisoners generally have one year in which to file federal habeas petitions. For federal prisoners, the limitations period generally runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). For state prisoners, the limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. § 2244(d)(1)(A).

---

[1]The parties do not dispute that AEDPA's limitations period was tolled while Camacho's state postconviction proceedings were pending.

In Clay v. United States, 537 U.S. 522, 527 (2003), the Supreme Court noted that for federal prisoners seeking habeas relief under 28 U.S.C. § 2255, a federal judgment becomes final "when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari." If a federal prisoner does not file a petition for certiorari with the Supreme Court on direct review, "§ 2255's one-year limitation period starts to run when the time for seeking such review expires." Id. at 532. In reaching this conclusion, the Clay Court rejected the argument that because Clay had elected not to seek certiorari, the limitations period began to run on the date the court of appeals issued its mandate. Id. at 529-30. In Jimenez v. Quarterman, 555 U.S. 113, 119-20 (2009), the Supreme Court extended its reasoning in Clay to "the similar language of § 2244(d)(1)(A)," holding that AEDPA's limitations period was "reset" when a state petitioner was granted leave to file an out-of-time direct appeal. The judgment in those circumstances became final only at "the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that [out-of-time direct] appeal." Jimenez, 555 U.S. at 121. The Court noted that "the plain language of § 2244(d)(1) . . . pinpoints the uniform date of finality set by Congress" as the "conclusion of direct review or the expiration of the time for seeking such review." Id. Thus, both Clay and Jimenez "suggested that the direct review process either 'concludes' or 'expires,' depending on whether the petitioner pursues or forgoes direct appeal to this Court." Gonzalez v. Thaler, 132 S. Ct. 641, 653 (2012).

In Gonzalez v. Thaler, the Supreme Court considered when a judgment becomes final under § 2244(d)(1)(A) "if a petitioner does not appeal to a State's highest court." Id. at 653. The Court held that "for a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking review expires." Id. at 646. The Court clarified what it had suggested in Clay and Jimenez: the "two prongs" of § 2244(d)(1)(A)'s finality determination—either (1) the conclusion of direct review or (2) the expiration of the time for seeking such review—apply to distinct categories of petitioners. Id. at 653. For petitioners who pursue direct review to the U.S. Supreme Court under the first

prong, judgment becomes final at the conclusion of direct review, *i.e.*, when the Supreme Court "affirms a conviction on the merits or denies a petition for certiorari." Id. at 653. "For all other petitioners, the judgment becomes final [under the second prong] at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires." Id. at 653-54.

In Gonzalez, the petitioner allowed the time for seeking review of a Texas appellate court's decision to lapse, and the court issued its mandate six weeks later. The petitioner filed a § 2254 petition, which was dismissed as untimely because it was not filed within one year of the time for seeking review with the State's highest court. The petitioner argued that the time should have been calculated from the date the appellate court issued its mandate, because "whenever a petitioner does not seek certiorari, the 'conclusion of direct review' is the date on which state law marks finality—in Texas, the date on which the mandate issues." Id. at 654. The Supreme Court rejected this approach, noting that determining "finality" under each State's law would require the Court "to scour each State's laws and cases to determine how it defines finality for every petitioner who forgoes a state-court appeal." Id. at 655. Such an approach "would usher in state-by-state definitions of the conclusion of direct review" and "would be at odds with the uniform definition" adopted in Clay and Jimenez, *i.e.*, that the trigger for the AEDPA limitations period when the petitioner does not pursue a direct review is the expiration of the time for seeking direct review. Id. The Court acknowledged that its holding necessarily involved some limited consideration of state law:

> [J]ust as we determine the "expiration of the time for seeking [direct] review" from this Court's filing deadlines when petitioners forgo certiorari, we look to state-court filing deadlines when petitioners forgo state-court appeals. Referring to state-law procedures in that context makes sense because such deadlines are inherently court specific. There is no risk of relying on "state-law rules that may differ from the general federal rule."

<u>Id.</u> at 655 (quoting <u>Clay</u>, 537 U.S. at 531); <u>see also</u> <u>King v. Hobbs</u>, 666 F.3d 1132, 1135 n.2 (8th Cir. 2012) (noting that the Supreme Court in <u>Gonzalez</u> "instructed us that when a petitioner decides to forgo state-court appeals, we must 'look to state-court filing deadlines' to determine the 'expiration of the time for seeking [direct] review'").

In Arkansas, a criminal defendant generally has thirty days from "the date of entry of a judgment" in which to file an appeal, Ark. R. App. P.-Crim. 2(a)(1), but a criminal defendant has no right to appeal from a guilty plea, except for an appeal from a conditional guilty plea based on the denial of a suppression motion, <u>see</u> Ark. R. App. P.-Crim. 1(a) ("Except as provided by [Rule 24.3(b) for conditional guilty pleas,] there shall be no appeal from a plea of guilty or nolo contendere."). The Arkansas Supreme Court has recognized two additional exceptions to the general rule: "(1) when there is a challenge to testimony or evidence presented before a jury in a sentencing hearing separate from the plea itself; and (2) when the appeal is an appeal of a posttrial motion challenging the validity and legality of the sentence itself." <u>Hewitt v. State</u>, 208 S.W.3d 185, 186 (Ark. 2005) (per curiam).

Citing the appeal prohibition set forth in Rule 1(a), the State argues that when a criminal defendant enters an unconditional guilty plea in state court, AEDPA's one-year limitations period begins to run from the date on which the state judgment and commitment order are entered—not from the date on which the thirty-day period in which to file an appeal expires. <u>See, e.g.</u>, <u>Calianno v. Hobbs</u>, No. 12-5028, 2013 WL 628595 (W.D. Ark. Jan. 28, 2013), *adopted by* 2013 WL 655184 (W.D. Ark. Feb. 22, 2013).

In <u>Clay</u>, <u>Jimenez</u>, and <u>Gonzalez</u>, the Supreme Court emphasized Congress's intent under AEDPA to define "finality . . . by reference to a uniform federal rule" and not "by reference to state-law rules that may differ from the general federal rule and vary from State to State." <u>Clay</u>, 537 U.S. at 531. As noted by the Supreme

Court, the uniform federal rule of finality for petitioners who forgo state-court appeals is determined by reference to "state-court filing deadlines" for those appeals. Gonzalez, 132 S. Ct. at 655. Determining whether an Arkansas petitioner has pled guilty conditionally or unconditionally or whether his appeal falls within one of the other exceptions to the general prohibition on appeals from guilty pleas is the sort of state-specific inquiry that the Supreme Court has cautioned would undermine the "general federal rule" that "state-court filing deadlines" determine the limitations period when petitioners do not pursue state-court appeals. The Supreme Court has specifically instructed that the expiration of the deadline for filing an appeal is the critical trigger for AEDPA's limitations period. Thus, for Camacho, "a state prisoner who d[id] not seek review in [the] State's highest court, the judgment [became] 'final' on the date that the time for seeking such review expire[d]." See id. at 646.

The district court emphasized the following language from Gonzalez in rejecting Camacho's petition: "[W]e determine the 'expiration of the time for seeking [direct] review' from this Court's filing deadlines when petitioners forgo certiorari, [and] we look to state-court filing deadlines when petitioners forgo state-court appeals." Id. at 655. The district court concluded that Camacho "did not 'forgo' a state-court appeal, he was precluded from filing such an appeal because he pled guilty." The Supreme Court's holding in Gonzalez was not so limited. The holding in Gonzalez extends to "state prisoner[s] who do[] not seek review in a State's highest court"; it does not exclude state prisoners who do not seek review because such review is prohibited by state law or by a plea agreement. Id. at 655; see also Latham v. United States, 527 F.3d 651, 653 (7th Cir. 2008) (noting that a "defendant who forswears appellate review as part of a plea bargain remains entitled to file a notice of appeal" even if "that appeal is doomed unless the guilty plea is involuntary"); Mark v. Thaler, 646 F.3d 191, 194 (5th Cir. 2011) ("The relevant question is whether Mark was entitled to file a petition, not whether a hypothetical petition would have been successful."); cf. Artuz v. Bennett, 531 U.S. 4, 9 (2000) (noting that in context of AEDPA's tolling provision for a properly filed application for state postconviction

relief, "the question whether an application has been 'properly filed' is quite separate from the question whether the claims *contained in the application* are meritorious"). Our reading of the Supreme Court's several holdings leads us to conclude that the critical date for finality of the state-court conviction is the expiration of the state's filing deadline.

We therefore vacate the district court's order dismissing Camacho's § 2254 petition as untimely, and we remand the case to the district court for further proceedings consistent with this opinion.

_____